UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

HEADS-UP HATS LLC,

    Plaintiff,

    v.     Case No. 11-C-1018

AMERICAN ECONOMY INSURANCE COMPANY,

    Defendant.

DECISION AND ORDER DENYING AMERICAN ECONOMY INSURANCE
COMPANY'S MOTION FOR SUMMARY JUDGMENT
AND SETTING STATUS CONFERENCE

On December 5, 2010, Heads-Up Hats, LLC, suffered fire and smoke damage when an adjacent business burned. After Heads-Up Hats made a claim for property damage and loss of business income under its Business Owners Policy, American Economy Insurance paid the policy limits on the personal property damage claim but the parties reached an impasse on the business income claim. American Economy provided a loss calculation of $8,166 and an "extended business loss" calculation of $340, whereas Head-Up Hats believes the loss of business income to be $145,000. Consequently, Heads-Up Hats filed this breach of contract and bad faith action. Because there are genuine issues of material fact regarding the amount of the business income claim and whether Heads-Up Hats complied with the terms of the policy, American Economy's motion will be denied.

SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving

party has the initial burden of demonstrating that it is entitled to summary judgment. *Id.* at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend its case. *Id.* at 322-24.

In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion; however, there must be a genuine issue of material fact for the case to survive. *Id.* at 247-48.

"Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir.1997). Failure to support any essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323. A "genuine" issue of material fact requires specific and sufficient evidence that, if believed by a jury, would actually support a verdict in the nonmovant's favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## FINDINGS OF FACT

Heads-Up Hats sold hats in Milwaukee, Wisconsin, from May of 1995 to March 31, 2012. (Coleman Dep. 8:8, 21-24, attached as Ex. A to Rose Aff.) The business operated a store in a strip mall at 1935 W. Silver Spring Drive, Suite 7, Milwaukee, Wisconsin. (Comp. 1; Doc. 2-1, No. 24; Coleman Dep. 8:8, attached as Ex. A to Rose Aff.) On December 5, 2010, a fire broke out in the nail salon next door, causing damage to the Heads-Up Hats space and inventory. (Compl. ¶ 9; Doc. No. 24.) As a result, the store was

closed from December 5, 2010 to April 1, 2011. (Coleman Dep. at 12:9 -19; attached as Ex. A to Malloy Aff.) A salvage company removed everything. (Coleman Dep., att. as Ex. A to Rose Aff.).

At the time, Heads-Up Hats was insured under a Business Owners' Policy ("the Policy") issued to Corey L. Coleman, by American Economy Insurance Company. (Compl. ¶¶ 2,8; Doc. No. 2-1; Policy, attached as Ex. C to Malloy Aff.). Heads-Up Hats filed a claim for property damage under the Policy. (Coleman Dep. at 35:18-21, attached as Ex. A to Malloy Aff.)

On or about December 22, 2010, American Economy satisfied the property damage claim by paying the personal property policy limits of $147,000. (Coleman Dep. at 35:18 -21, attached as Ex. A to Malloy Aff.) However, Heads-Up Hats also submitted a claim for loss of business income under the Policy. (Compl. ¶ 13; Doc. No. 2-1).

The Policy provides coverage for lost Business Income as follows:

f.  Business Income

(1)  Business Income

    (a)  We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

    (b)  We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage. We will only pay for ordinary payroll expenses for 60

3

days following the date of direct physical loss or damage, unless a greater number of days is shown in the Declarations.

 (c) Business Income means the:

  (I) Net income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on the other businesses; and

  (ii) Continuing normal operating expenses incurred, including payroll.

The Policy also defines Extended Business Income as follows:

(2) Extended Business Income

 (A) If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

  (I) Begins on the date property except finished stock is actually repaired, rebuilt or replaced and "operations" are resumed; and

  (ii) Ends on the earlier of:

   I. The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

   ii. 30 consecutive days after the date determined in Paragraph (a)(I) above, unless a greater number of consecutive days is shown in the Declarations.

The Policy defines "operations" and "period of restoration" as follows:

4

Property Definitions

8. "Operations" means your business activities occurring at the described premises.

9. "Period of restoration":

   a. Means that period of time that:

   (1) Begins:

   (a) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

   (b) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

   Caused by or resulting from any Covered Cause of Loss at the described premises; and

   (2) Ends on the earlier of:

   (a) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

   (b) The date when business is resumed at a new permanent location.

(Policy at 31, 32, attached as Ex. C to Malloy Aff.)

The Policy contains a provision that requires the insured to "cooperate with [insurer] in the investigation or settlement of the claim." (Policy at 23, E.3.a.(8), attached as Ex. C to Malloy Aff.). Another provision states "[n]o one may bring a legal action against [the insurer] under this insurance unless: a. there has been full compliance with all the terms of this insurance ...." (Policy at 23, E.4. attached as Ex. C to Malloy Aff.).

On December 17, 2010, American Economy accountant Deborah Allen Bok made initial contact with Heads-Up Hats' principal, Corey Coleman, to discuss the business

5

income claim. (Bok Aff. at ¶¶ 2-3; 12/20/10 Email, attached as Ex. A to Bok Aff.) Three days later, Bok requested from Coleman the following information to substantiate the loss: days and hours of operation; payroll documentation; monthly sales tax returns; monthly profit and loss statements; 2009 Income Tax return; and a copy of Heads-Up Hats' current lease. (Bok Aff. at 3; 12/20/10 e-mail, attached as Ex. A to Bok Aff.).

On January 6, 2011, Bok sent a follow up e-mail to Coleman again requesting the information to substantiate the loss. (Bok Aff. at ¶¶ 4-5; 1/6/11 e-mail, attached as Ex. B to Bok Aff.). Heads-Up Hats' accountant, James Stearns, a CPA who has worked with Heads-Up Hats since 1995, provided some of the information requested by Bok. (Bok Aff. at ¶ 6; Stearns Dep. at 22:9, 27, 27:19-23, 37:11 - 38:17, attached as Ex. B to Malloy Aff.).

On January 19, 2011, Bok requested from Stearns the profit and loss statements for Heads-Up Hats from October 2010 to December 2010. (Bok Aff. at ¶¶ 7-8; E-mail from Bok to Stearns of 1/19/11, attached as Ex. C to Bok Aff.). Stearns provided the requested 2010 profit and loss statements on January 21, 2011. (Bok Aff. at ¶¶ 9-10; E-mail from Carol Pawlik to Bok of 1/21/11, attached as Ex. to Bok Aff.; Stearns Dep. at 38:19 - 39:11, attached as Ex. B to Malloy Aff.).

Bok issued an initial report on Heads-Up Hats' business loss claim on January 26, 2011, calculating that Heads-Up Hats had a twelve month business income loss of $1,348.00. (Bok Aff. at ¶¶ 11-13; 1/26/11 Loss Audit Report, attached as Ex. E to Bok Aff.). And on January 28, 2011, Mark DeGraaf provided Bok's report to Coleman. (DeGraaf Aff. at ¶¶ 2 - 3; 1/28/11 E-mail from DeGraaf to Coleman). Coleman then reviewed the report and informed American Economy that he had further documentation that he wanted to

provide in support of the business income claim. (Coleman Dep. at 64:23 - 66:10, attached as Ex. A to Malloy Aff.).

After receiving the January 26, 2011, loss audit report, Coleman had a conversation with Stearns, who informed him that American Economy had used the numbers off the tax return and those calculations were correct. (Coleman Dep. at 67:15 - 68:24, attached as Ex. A to Malloy Aff.).

On March 29, 2011, American Economy claims representative Mark DeGraaf informed Coleman that based on the January 26, 2011 report, Heads-Up Hats' business loss from December 5, 2010 to April 1, 2011 was $499. (Bok Aff. at ¶ 14; DeGraaf Aff. at ¶¶ 6-7; 3/29/11 E-mail from DeGraaf to Coleman, attached as Ex. C to DeGraaf Aff.).

On May 6, 2011, DeGraff asked Coleman to provide more information to support his claim. (DeGraaf Aff. at ¶¶ 8-9; 5/6/11 E-mail from DeGraaf to Coleman, attached as Ex. D to DeGraaf Aff.). Coleman informed American Economy that his landlord required that he pay rent in March 2011, and thus the March 2011 rent payment should not be characterized as a "saved expense" in the January 26, 2011, loss audit report. (DeGraaf Aff. at ¶ 10; Coleman Dep. at 73:6 - 23, attached as Ex. A to Malloy Aff.).

American Economy prepared an amended audit report on May 16, 2011, increasing the business income loss from $499 to $2,129, based upon the information provided by Coleman. (Bok Aff. at ¶¶ 15-16; 5/16/11 Loss Audit Report, attached as Ex. F to Bok Aff.; DeGraaf Aff. at ¶¶ 10-11, 5/16/11 E-mail from DeGraaf to Coleman, attached as Ex. E to DeGraaf Aff.).

After receiving the May 16, 2011, amended loss audit report, Coleman asked Stearns to issue his own report calculating loss of business income. (Coleman Dep. at 80:19 - 81:8,

7

attached as Ex. A to Malloy Aff.). Stearns issued a June 30, 2011, report opining that Heads-Up Hats' business loss was $145,000. (Doc. 17 at 3; DeGraaf Aff. at ¶ 12).

On July 12, 2011, Bok prepared a second amended Loss Audit Report, increasing the amount of business income to $8,166, and adding an extended business income calculation of $340.00. (Bok Aff. at ¶¶ 17-18; 7/12/11 Loss Audit Report, attached as Ex. G To Bok Aff.). In an e-mail dated August 8, 2011, DeGraaf wrote to Stearns:

> Dear James Stearns, Here is the response from our Loss Audit department on the calculation of the Business Income loss for Corey Coleman. I am sending a hard copy via mail of the assessment. Please note there is a request on how you determined your loss amounts for the Period of Restoration and 30 additional days. Coverage under the policy is limited to the restoration period and then 30 days after starting the business again. Also a request for the insured's 2010 tax return has been requested. Please provide to me and Deborah Bok. Sincerely, Mark DeGraaf. (E-mail from DeGraaf to Stearns, attached as Ex. G to DeGraaf Aff.).

On August 9, 2011, DeGraaf supplied Coleman with the July 12, 2011, second amended audit report prepared by Bok. (DeGraaf Aff. ¶¶ 17-18; 8/9/11 Letter from DeGraaf to Coleman, attached as Ex. H to DeGraaf Aff.). Heads-Up Hats filed this breach of contract/bad faith action in Milwaukee County Circuit Court on September 28, 2011, and American Economy filed its notice of removal on November 3, 2011. (Doc. 2, Ex. 1.) .

CONCLUSIONS OF LAW

Previously, this court granted American Economy's unopposed motion to bifurcate and stay the bad faith claim. (Doc. 15.) Now, American Economy moves for summary judgment on the ground that there is no genuine issue of material fact on the breach of contract claim. However, this is a difficult argument inasmuch as American Economy does not dispute that Heads-Up Hats has a valid loss of business income claim and no monies have been paid to date. Moreover, the value of the claim appears to be shifting upward.

8

Since the beginning of its investigation, American Economy has adjusted the value of the Heads-Up Hats' claim from $499 to $8,155 with a 30 day extended business loss calculation of $340. In a footnote buried on page 17 of its supporting brief, American Economy concedes that its expert "reviewed the calculations in American Economy's report and has further increased the lost Business Income to $13,362." Although American Economy maintains it "stands ready and will[ing]" to pay Heads-Up Hats' business income claim in accordance with the terms of the Policy, simultaneously, it asserts that it has no obligation to pay because Heads-Up Hats failed to cooperate by providing the requested documentation. Hence, the court is asked to decide whether American Economy has an obligation to pay and, if so, how much.

The court begins with the policy language. A federal district court sitting in diversity "is to apply the law of the state in which the court sits with respect to substantive matters. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)." *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 633 (7th Cir. 2002). In Wisconsin, an insurance policy is a contract, and a court's primary purpose in interpreting a contract for insurance is to give effect to the intentions of the parties. *Folkman v. Quamme*, 2003 WI 116, ¶ 12. The parties' intentions are presumed to be expressed in the language of the policy. *Id.*, ¶¶ 12–13. The court construes the policy language from the perspective of a reasonable insured, giving the words used their common and ordinary meaning. *Stubbe v. Guidant Mut. Ins. Co.*, 2002 WI App 203, ¶ 8. On the other hand, where the policy language at issue "is susceptible to more than one reasonable construction," it is ambiguous. *Id.* Where ambiguity exists in a grant of coverage, the court construes the

9

policy against the drafter, and in favor of the reasonable expectations of the insured. *Folkman*, 264 Wis. 2d 617, ¶¶ 16–17, 665 N.W.2d 857.

Here, the policy provides coverage for "actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration.'" Business income is defined as "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damages had occurred" and "continuing normal operating expenses incurred, including payroll." The court agrees that the policy language unambiguously limits coverage to net profit or loss that would have been earned and the normal operating expenses incurred. In addition, the policy language limits the loss of business income to the "12 consecutive months after the date of direct physical loss or damage and ordinary payroll expenses for 60 days following the date of direct physical loss or damage unless a greater number of days is shown in the Declarations."

American Economy maintains that its loss of business income calculation complied with the above terms and that Heads-Up Hats has produced no expert who is critical of its calculation or will assert that American Economy breached the terms of the policy. Stearns, Heads-Up Hats' sole expert, testified in his deposition that he will not be giving an opinion that the calculation made by Bok in the January 26, 2011, audit report was incorrect. That said, the American Economy audit report calculated lost business income as $8,166 plus extended business income of $340, and limited the recovery to the "period of restoration," plus an additional 30 days after Heads-Up Hats resumed operations. More recently, American Economy's expert, John Peters, increased the loss of business income to $13,362 with extended business income of $470. Peters' report was not included in the

10

proposed findings of fact but was referenced in a footnote and docketed with the expert disclosure.

The Civil Local Rules require a moving party to file a statement of proposed material facts which entitle it to judgment as a matter of law. Civil L.R. 56(b)(1)(C). Therefore, American Economy has adopted a loss of business income calculation without giving Heads-Up Hats the opportunity to dispute it as a proposed finding with "specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon." Civil L.R. 56(b)(2)(B)(i).

Ultimately, American Economy's motion asks this court to reject a breach of contract claim where there is no evidence that American Economy has tendered a check. Moreover, its own calculations continue to change, and critical documents are not a part of its summary judgment submissions. However, the court agrees that at least a portion of the Stearns' report does not comply with the terms of the policy. The Stearns' report calculates business loss of $84,000 over a three year span "after [the store] was fully operational." This is improper. The unambiguous terms of the policy limit lost business income to the "period of restoration" not to exceed twelve months, plus thirty days of extended business income. Also, Stearns admitted in his deposition that he did not limit his analysis "of business income lost after the store was opened and fully operational." In any event, the breach of contract claim must be decided by a jury.

Additionally, American Economy has argued that Heads-Up Hats is precluded from bringing a claim under the Policy because it failed to respond to its request for documentation to substantiate its accountant's calculation. The Policy provides that no one may bring legal action against American Economy unless there has been full compliance

11

with all the terms of the insurance. One of the terms includes cooperation in the investigation or settlement of the claim.

Following American Economy's receipt of Stearns' report calculating the business loss at $145,000, American Economy claims adjuster, Mark DeGraaf, requested further documentation to support Stearns' calculations. American Economy cites Exhibit F of the DeGraaf Affidavit, a July 6, 2011, e-mail from DeGraaf to Coleman stating:

> I have forwarded the information from your accountant to Deborah Bok for review. A letter will be drafted addressing the definition of Business Income and the period of coverage that is afforded by your policy. A request will be made for supporting documentation regarding your accountants calculations as well. There are some questions on how the figures were determined and this will be requested from your accountant. The letter will be issued to you and your accountant and will provide our calculation of loss for your review.

When asked in his deposition whether he supplied the requested information, Stearns responded that he was not aware of the e-mail. The court notes that the e-mail did not make a specific request but states that one will be made. Subsequently, on August 8, 2011, DeGraaf e-mailed Stearns as follows:

> Here is the response from our Loss Audit department on the calculation of the Business income loss for Corey Coleman. I am sending a hard copy via mail of the assessment. Please note there is a request on how you determined your loss amounts for the Period of Restoration and 30 additional days. Coverage under the policy is limited to the restoration period and then 30 days after starting the business again. Also a request for the insured's 2010 tax return has been requested. Please provide to me and Deborah Bok.

Coleman testified that his 2009 and 2010 returns were late and he obtained extensions for filing, and that the 2010 tax return was provided to American Economy. Coleman's affidavit states that he was never informed that American Economy denied his business loss claim because he failed to provide documents. He further avers that he never withheld any information from American Economy and has provided complete and detailed discovery

12

since retaining counsel. In his affidavit, Stearns states that he only vaguely remembers a request for Coleman's 2010 income tax return which had not been filed at the time of the request. He adds that he cooperated fully with American Economy's request for documents and was at all times willing to provide further documents or information upon request.

The parties agree that Coleman and/or Stearns have provided the days and hours of operation, the payroll by pay period, the lease, and at least some monthly sales tax returns, monthly profit and loss statements, and income tax returns. On the other hand, there is disputed testimony regarding documentation of additional claimed losses for things such as advertising and signage, as well as monthly expenses while closed, including phone, accountant's preparation and work, trash removal, and credit card processing fees. Finally, Stearns testified that he provided a long letter showing he had "done a lot of analysis" and summarizing all of Heads-Up Hats' income and expenses by years. He believed there were some calculations as well. In his deposition, Stearns testified that he provided "whatever they requested." Hence, it is unclear whether Heads-Up Hats violated the cooperation clause. As a consequence, this issue cannot be decided as a matter of law. Now, therefore,

IT IS ORDERED that American Economy's motion for summary judgment is denied.

IT IS FURTHER ORDERED that the parties shall appear for a status conference on Wednesday, March 13, 2013, at 11:00 AM in Courtroom 222.

Dated at Milwaukee, Wisconsin, this 30th day of January, 2013.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
U. S. DISTRICT JUDGE

13